66 F.3d 345
 40 Cont.Cas.Fed. (CCH) P 76,844
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
PENN ENVIRONMENTAL CONTROLS, INC., Appellant,
v.
Jesse BROWN, Secretary of Veterans Affairs, Appellee.
 No. 94-1518.
 United States Court of Appeals, Federal Circuit.
 Sept. 5, 1995.
 
 Before NEWMAN, CLEVENGER, and BRYSON, Circuit Judges.
 DECISION
 BRYSON, Circuit Judge.
 
 
 1
 Penn Environmental Controls, Inc. (PEC) appeals the decision of the Veterans Affairs Board of Contract Appeals in No. VA-BCA-3726. The Board held that PEC is entitled to an equitable adjustment in the contract price for work it performed at a Department of Veterans Affairs facility, but the Board awarded PEC an amount less than PEC claimed. We vacate and remand.
 
 BACKGROUND
 
 2
 On January 29, 1991, PEC was awarded a fixed-price contract for the removal and disposal of asbestos pipe wrapping at the Department of Veterans Affairs Medical Center in Batavia, New York. The project required PEC to make wall and ceiling openings at the various removal sites within the building in order to obtain access to the asbestos. PEC performed the work under full asbestos containment conditions. Based on its understanding of the contract, PEC anticipated that it would encounter only hollow walls and acoustical ceiling at the opening sites.
 
 
 3
 Several months into the project, while making openings in walls on the second floor of the project site, PEC unexpectedly encountered "speed tile" walls. Speed tile walls are made of hollow masonry blocks to which coats of plaster are directly applied. Because they include masonry blocks, speed tile walls are more difficult to demolish and remove than hollow walls, i.e., walls consisting of a metalmesh to which coats of plaster are applied. PEC also incurred other unexpected costs on the second floor due to the presence of brick wall, concrete ceiling, and acoustical tile. As a consequence of the unexpected labor and material costs incurred in connection with the work on the second floor, PEC submitted a claim for an additional $41,240.51 above the contract price. In calculating the cost of removing the speed tile walls, PEC submitted that an additional 1.5 hours of work were required for each square foot of speed tile wall that was removed from the second floor.
 
 
 4
 PEC also encountered speed tile walls on the third floor and submitted a claim for an equitable adjustment of $49,376.18 for the additional labor and material costs on that floor. In light of relaxed wall resealing requirements on the third floor and the experience gained by PEC's employees in removing the speed tile walls on the second floor, PEC submitted that removing the speed tile from the third floor required only an additional one-half hour of labor per square foot.
 
 
 5
 The Board concluded that PEC was entitled to recover additional costs resulting from the unexpected conditions found during the asbestos removal procedure. In determining the amount of the recovery, the Board explained that PEC was entitled to "the difference between the reasonable, actual costs it incurred as a result of the actual wall and ceiling construction it encountered and the cost of the contract work for the anticipated plaster hollow wall and ceiling construction." In applying that measure of recovery, the Board accepted PEC's submission that one-half hour of labor per square foot was required for the removal of plaster hollow walls. The Board also accepted PEC's submission that removing speed tile on the second floor required an additional 1.5 hours of labor per square foot. The Board then determined that PEC was entitled to recover the cost of one additional labor hour per square foot of speed tile wall on the second floor--the difference between the 1.5 hours for speed tile walls and the one-half hour for plaster hollow walls.
 
 
 6
 Accepting PEC's submission that an additional one-half hour of labor per square foot was required to remove the speed tile on the third floor, the Board determined that PEC was not entitled to any additional recovery for the labor and related material costs for the third floor work, since PEC estimated that the removal of plaster hollow walls would also have taken one-half hour per square foot. Based on these calculations and some additional adjustments, the Board awarded PEC $19,620.53 plus interest.
 
 
 7
 PEC moved for reconsideration of the Board's decision, asking that the award be increased to $78,010. The Board denied the motion and adhered to its initial decision. It explained that PEC's argument was "rooted in an erroneous factual assumption" that PEC had encountered a "double wall" construction in which both a plaster hollow wall and a speed tile wall had to be removed. The Board reiterated its factual finding that PEC had encountered a single wall consisting of speed tile to which a plaster coat was applied, rather than the single plaster hollow wall that PEC had expected to find. PEC then took this appeal, once again protesting the amount of the recovery.
 
 DISCUSSION
 
 8
 In determining the proper amount of PEC's recovery, the Board relied on PEC's evidence concerning the amount of additional work and the extra labor required to do it. In particular, the Board credited PEC's evidence that it removed 228 square feet of speed tile wall on the second floor of the Medical Center and 1469 square feet of speed tile wall on the third floor. The Board also credited PEC's evidence that the removal of the speed tile wall required 1.5 "extra labor hours" per square foot on the second floor and 0.5 "extra labor hours" per square foot on the third floor. The dispute between the parties is limited to whether the Board correctly interpreted PEC's labor estimates.
 
 
 9
 The Board's analysis leaves us in doubt as to whether the Board correctly calculated the amount of the equitable adjustment due to PEC. PEC claimed that it devoted 342 "extra labor hours" to removing the speed tile on the second floor and 856 "extra labor hour[s]" to removing the speed tile on the third floor. The Board appears to have treated those figures as stating the total amount of labor required for the removal of the walls where speed tile was found, not the additional labor to remove the speed tile walls, over and above the amount that would have been required to remove plaster hollow walls.
 
 
 10
 PEC argues that the Board misinterpreted the figures on which it based its calculations. According to PEC, the "extra" labor hours for the removal of speed tile represent additional hours, for which PEC was not compensated in the contract, that were required to remove the speed tile walls encountered on the second and third floors of the Medical Center.
 
 
 11
 In arguing that the Board's method of calculation does not make sense, PEC points to the calculations regarding the third floor work. PEC's evidence was that the additional work required to remove each square foot of speed tile on the third floor was equal to the amount of work that would have been required to remove plaster hollow walls. Accordingly, interpreting the "extra work" on the third floor to mean the gross amount of labor to remove the third floor walls, as the Board appears to have done, would mean that it took no more time to remove the speed tile on that floor than it would have taken to remove plaster hollow walls--a seemingly questionable proposition in light of the greater amount of material found in speed tile walls than in plaster hollow walls.
 
 
 12
 The difficulty in using PEC's work estimates to calculate the proper amount of the equitable adjustment stems from the fact that PEC generated those estimates on the basis of its contention that where it encountered speed tile construction, it had to separately remove both plaster hollow walls and speed tile. The Board permissibly rejected that contention on factual grounds, finding that the "speed tile walls" that PEC encountered consisted of speed tile with a plaster coating rather than a double wall construction. It does not necessarily follow from that finding, however, that the "additional hours" required to remove the speed tile walls represent the total amount of work required to remove the plaster-coated speed tile, as the Board appears to have assumed. In order to ensure that PEC's labor calculations have not been used in a manner that significantly understates the additional amount of work that PEC was required to perform in order to remove the unexpected speed tile walls, we conclude that a remand is required to address this narrow factual point.
 
 
 13
 On remand, the Board should determine explicitly whether PEC's "extra labor hours" for the removal of speed tile wall reflect the total amount of labor required to remove the speed tile walls on the second and third floors, or whether those figures reflect extra labor, beyond that for which PEC was paid under the contract.
 
 
 14
 Finally, we note that certain costs that the Board awarded to PEC were directly related to the amount of additional labor needed to remove the unexpected materials. Those additional costs, which include labor-related material costs and the cost of a certified industrial hygienist, should be reconsidered on remand if the Board determines that PEC is entitled to additional compensation for its labor costs.
 
 
 15
 Each side shall bear its own costs for this appeal.